## PARSHELSKY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 151.

Circuit Court of Appeals, Second Circuit.

May 5, 1943.

Lawrence A. Baker, of Washington, D. C. (John A. Selby, Henry Ravenel, and Henry H. Elliott, all of Washington, D. C., of counsel), for petitioner.

Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and L. W. Post, all of Washington, D. C., for respondent.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

In December 1934 and January 1935, the taxpayer Moses Parshelsky and his brother Isaac, pursuant to an agreement between them, each applied for, and there were issued to each of them, by insurance companies, five single premium annuity policies, the aggregate of the premiums paid by each brother being $200,000. The policies issued to Moses contained three provisions: (a) Isaac was made the annuitant during his lifetime; (b) if Moses survived Isaac, and if at the death of Isaac there existed an unpaid balance (i.e., an excess of the amount paid as premium over the amount of annuity payments theretofore made), then payments should be made in installments to Moses during his lifetime and, at his death, in a lump sum to his estate; (c) but if Moses should not be living at the death of Isaac, then any such unpaid balance should be paid in a lump sum to the estate of Isaac. On the basis of evidence of an actuarial expert, the Tax Court found that, of the $200,000, (a) $172,595.50 was paid for the first of these items, (b) $23,347.77 paid for the second,

and (c) $4,056.73 for the third. In the policies applied for by, and issued to, Isaac, there were three similar but reciprocal items, Moses being named in the first, Isaac or his estate in the second, and Moses' estate in the third; and the apportionment of the consideration as to these three items, as found by the Board on the basis of the actuarial testimony, was respectively $170,-141.64, $26,731.28 and $3,685.08.[1] Before, and at the time of, the purchase of these annuities, Moses and Isaac were each indebted to the United States for income taxes and to other persons, and knew that jeopardy assessments of taxes against them were being considered by the Commissioner of Internal Revenue, but did not know the amount of the taxes claimed by the Commissioner to be due and owing. Each of the policies provided, in one way or another, for exemption of payments from creditors' claims. Isaac died in 1935 before he had received any payments under the policies and before any such payments became due or payable.

In the taxable year 1938 Moses received $14,390.50 as "remainderman" under the policies issued to Moses, and $14,980 as the original annuitant under the policies issued to Isaac. Before the taxable year, under the policies issued to Moses, he had received $42,871.50 and, under the policies issued to Isaac, $41,278.00.

§ 22 (b) (2) of the Revenue Act of 1938, c. 289, 52 Stat. 447, 26 U.S.C.A.Int.Rev. Code, § 22 (b) (2), provides: "Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title [chapter] or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by

the transferee shall be exempt from taxation under paragraph (1) of this paragraph * * *."

The Commissioner found a deficiency in Moses' income tax for the taxable year 1938 and Moses petitioned the Tax Court for a redetermination thereof. The Tax Court found that Moses must be considered as the purchaser of the policies which his brother Isaac applied for and which were issued to Isaac, but that the consideration which Moses paid therefor was not $200,000 but only $173,826.62, that being the amount paid for the first and third items provided for in those policies. The court held that the balance of the $200,000—i.e., $26,173.28 —must be regarded as the consideration paid by Moses for a transfer by Isaac to him of the right of Moses and his estate to receive payments, under the policies issued to Moses, upon Moses' survival after Isaac's death. Accordingly, on the basis of these facts, it held that, as Moses, before the taxable year, had received under the policies issued to him in which he and his estate had a remainder after Isaac's death, more than the consideration of $26,173.28 paid by him for the transfer, the full amount received by Moses under those policies in the taxable year, i.e., $14,390.50, must be included in his gross income. It also held that, as, under the other policies, he had not received the full amount of the consideration of $173,826.62, there must be included in his gross income for the taxable year not the $14,980 received by him in that year under those policies, but only 3% of that consideration.

There was substantial evidence to support the Tax Board's findings in general. But we disagree with its conclusion concerning the consideration paid by Moses. As above noted, the Tax Court found that Moses purchased the policies issued to Isaac. We think that the situation was as follows: As above noted, there were three items in the policies issued to Moses, the first item being for the benefit of Isaac, the second for the benefit of Moses or his estate, and the third for the benefit of Isaac's estate. These items cost respectively $172,-595.50, $23,347.77 and $4,056.73. In the policies applied for and issued to Isaac, there were three similar but reciprocal items, the first being for the benefit of Moses, the second for the benefit of Isaac

---

[1] The differences between the payments by Moses and Isaac for these items derive from the differences in their ages.

or his estate, and the third for the benefit of Moses' estate. The first and third items in the policies issued to Moses were, in legal effect, transferred to Isaac, in consideration of the transfer by Isaac to Moses of the first and third items in the policies issued to Isaac. Accordingly, the consideration paid by Moses for the benefit to himself or his estate, under the policies issued to Isaac, was $176,652.23; this is the sum of the cost of the two benefits to Moses and his estate under those policies (i. e., the first and third items) ; for we agree with the Tax Court that the amount paid by Moses for both benefits should be lumped together and regarded as the pertinent "consideration" paid by him therefor. The second item in the policies issued to Moses was for the benefit of Moses himself and his estate; this he did not transfer but himself retained; the consideration paid by Moses for this item was $23,347.77.

On this basis, as Moses had received in the years before the taxable year, under the "remainder" to himself or his estate contained in the policies issued to Moses, a sum in excess of the consideration of $23,347.77 paid by Moses for that "remainder," the entire amount received by him under those policies during the taxable year—i.e., $14,390.50—must be included in his gross income. Under the policies issued to Isaac—the benefits of which to Moses or his estate were transferred to Moses—Moses has not received, before the taxable year and in the taxable year, an aggregate amount equal to the consideration of $176,652.23 paid by Moses for that transfer; therefore, not the $14,980 received thereunder, but only 3% of that consideration of $176,652.23 should be included in Moses' gross income for the taxable year.

The difference between the results of our conclusion and the figures as found by the Tax Court are relatively slight,[2] but we must remand for recomputation in accordance with this opinion.

Remanded.

SWAN, Circuit Judge (dissenting).

In the taxable year in question, 1938, the taxpayer, Moses Parshelsky, received $14,980 as the life annuitant named in policies applied for and issued to his brother, Isaac, and $14,390.50 under policies applied for and issued to himself, which named Isaac as the life annuitant and entitled Moses or his estate to payments becoming due after Isaac's death. If each brother had taken out his policies without previous consultation with the other, the amount which should be included in the gross income of Moses pursuant to § 22 (b) (2) of the Revenue Act of 1938 would be $12,000, that is, 3% of the aggregate premiums paid for the annuity contracts. See Title G. & T. Co. v. Commissioner, 40 B.T.A. 475. It is conceded, however, that the annuity contracts were taken out pursuant to agreement between the brothers. The precise terms of their agreement were not found by the Tax Court, nor are they stated in the majority opinion of this court. I assume the agreement to have been as follows: Moses agreed to invest $200,000 in single premium annuity contracts entitling Isaac to $14,390.50 annually during his life and Isaac agreed to invest a like sum in like annuity contracts entitling Moses to $14,980 annually so long as he should live.[1] That agreement was performed, and each brother became a life annuitant under policies issued to the other and also had a remainder interest in the policies issued to himself if he survived the annuitant. I can see no basis for inferring any agreement between the brothers as to what disposition should be made of the remainder interest in the policies issued to the other. After his own death, why should either brother be interested in whether subsequent payments under policies issued to the other were to go to the latter or to his wife or to some favored charitable institution? Under any agreement reasonably to be inferred to have been made between the brothers each was interested only in securing a life annuity under policies taken out by the other.

The Tax Court held that each brother bought the contracts issued to the other. It then split up the premium paid by Isaac on the policies issued to him into (a) consideration for life annuity payable to Moses, (b) consideration for payments to Isaac or his estate if he should survive Moses, and (c) consideration for payments to Moses' estate if Isaac should not survive. The Tax Court held that (a) and (c) totaling $173,826.72 were applied to purchase

---

[1] The difference in the annual payments was doubtless due to a difference in the ages of the life annuitants.

the annuities and that (b), the sum of $26,-173.28, "must be considered the consideration paid for a transfer, by petitioner's brother [Isaac] of the right to receive payment upon survival of the brother." This seems to me completely fictional. First, there was no transfer to Moses of Isaac's right to receive $14,390.50, if Isaac survived Moses. Secondly, since Isaac did not survive, Moses has received nothing as Isaac's assignee, if a transfer of Isaac's right be assumed. What Moses receives as survivor of Isaac he gets by virtue of the policies issued to himself.

My brothers, as I read their opinion, have not adopted the Tax Court's theory of a transfer of Isaac's "(b)" right to Moses. They say that Moses transferred to Isaac the "(a)" and "(c)" annuities provided in the policies issued to him and "retained" in himself the rights which the policies gave him in case he survived Isaac; and, since he has received more than the theoretical premium ascribed by the insurance companies as the cost of the rights retained, he is taxable upon the full payment instead of upon 3% of the premium paid for the contract. This seems equally fictional; nor do I find in the statute any justification for so splitting the premium. If A buys a single premium annuity contract naming B as life annuitant and C as surviving beneficiary, I do not understand that the premium is to be divided between the cost for the life annuity and the cost for payment to the surviving beneficiary and the latter taxed upon the full annual payments as soon as he has received a sum equal to the relatively small part of the premium ascribed to the cost of his part of the annuity contract. In such a case I think that B must include in his gross income 3% of the total premium so long as he receives the annuity, and when, on B's prior death, the annuity becomes payable to C, then C must likewise include 3% of the total premium so long as he receives the annuity. Or let it be supposed that X takes out an annuity policy naming Y as life annuitant and himself as surviving beneficiary because Y has promised to give him 1,000 shares of stock in Z corporation. So long as Y receives the annuity I think he is taxable on a sum equal to 3% of the whole premium paid by X. I do not believe that such a case involves "a transfer * * * by assignment or otherwise" of an annuity contract within the meaning of the Revenue Act. Similarly, in the case at bar,

I see no reason for indulging in fictions and unrealities merely to augment taxes. The reality is that Moses received $14,980 as life annuitant under Isaac's policies and $14,390.50 as surviving beneficiary under his own policies. He is taxable on $12,000, three per cent. of the aggregate premiums. I would remand the case for recomputation of the tax on this basis.